UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------X

SABRINA VINSON

      Plaintiff,               <u>MEMORANDUM AND ORDER</u>

  -against-                Civil Action No.
                               CV-01-6900(DGT)

NEW YORK CITY DEPARTMENT OF
CORRECTIONS, and WILLIAM J.
FRASIER, in his capacity as
Commissioner of the New York City
Department of Corrections,

      Defendant.

-------------------------------X

TRAGER, District Judge

    Plaintiff, correction officer Sabrina Vinson ("plaintiff"),
brought this action against the New York City Department of
Corrections ("DOC") and William J. Fraser as Commissioner
(collectively "defendants").  Plaintiff seeks relief under:
(1) the Americans With Disabilities Act, 42 U.S.C. § 12001 <u>et
seq.</u> (the "ADA"); (2) Title VII of the Civil Rights Act of 1964,
42 U.S.C. § 2000 <u>et seq.</u> ("Title VII"); (3) the Occupational
Safety and Health Act, 29 U.S.C. § 651 <u>et seq.</u> ("OSHA"); (4) the
New York Public Health Law, §§ 12(1), 309(1)(f), 1399-n through
1399-x; (5) the New York Labor Law, Article 7, § 201-d; (6) the
New York State Human Rights Law, N.Y. Exec. Law § 296 ("SHRL");
and (7) the New York City Human Rights Law, New York, N.Y.,
Admin. Code tit. 8, ch. 1, § 8-107 ("CHRL").  The root of

plaintiff's complaint is that she alleges a sensitivity to cigarette smoke and, as a result, she claims to need a smoke-free work environment.  Defendants now move for summary judgment.

## Background

### (1)

### Plaintiff's Ailments

According to plaintiff, a dentist at the Staten Island University Hospital Emergency Room diagnosed her with Lemierre's disease in 1997.  (Def. Rule 56.1 Statement ("Def. 56.1") 2; Sabrina Vinson Dep. Def. Ex. R ("Ex. R") at 48.)  Plaintiff claims the disease caused her to develop a blood clot in her right jugular vein and this clot eventually lead to respiratory problems.   (Sabrina Vinson Dep. Def. Ex. B ("Ex. B") at 42.) Plaintiff remained in the university hospital for a month and continued on blood thinners for six months.  (Ex. B at 46, 61.) This treatment cured the Lemierre's disease and dissolved the clot.  <u>Id.</u>  However, plaintiff claims that as a side effect of having the disease she still suffers from high blood pressure, has trouble breathing and "uncontrollable" bouts of coughing — all brought about by the Lemierre's disease.  (Ex. B at 43-46.) She claims these symptoms are all made significantly worse when

she is in the presence of cigarette smoke.[1]  (Ex. B at 61.)

Plaintiff states that so long as she avoids cigarette smoke, she has no symptoms.  Id.  She also claims that before New York City instituted a ban on smoking in public enclosed areas, she had stopped frequenting bars, clubs or other casual establishments where people were smoking.[2]  (Ex. B at 99.)

**(2)**

**History of Plaintiff's Claim**

When plaintiff returned to work following her treatment for Lemierre's disease, she discovered that the cigarette smoke present at the DOC facility where she was stationed exacerbated her respiratory problems.  (Ex. B at 72.)  As a result, in 1998 plaintiff requested the DOC transfer her to a smoke-free facility.  (Ex. B at 49.)  When the DOC did not act on this request, plaintiff filed a claim against the DOC with the U.S. Equal Employment Opportunity Commission (the "EEOC"), charge

---

[1] In her deposition, plaintiff also claimed a sensitivity to chemical products like Lysol or Mace ("Odious Capsicom" [sic]). (Ex. B at 45-46.)  In the complaint and the moving papers, however, the parties predominantly discuss only plaintiff's sensitivity to cigarette smoke.  Therefore, for purposes of this opinion, only plaintiff's sensitivity to cigarette smoke will be considered.

[2] Since 2003, the city of New York has prohibited smoking in all public enclosed areas.  New York, N.Y., R.C.N.Y. tit. 17, ch. 5, § 17-503 (2006) WL 17 RCNY S 17-503.  However, this case was filed in 2001, when most clubs, bars and restaurants still permitted smoking.

number 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. (Ex. B at 53-54; EEOC Settlement Agreement Def. Ex. D ("Ex. D") at 1.) Through the EEOC mediation process the parties reached a settlement. (Ex. D at 1.) Under the settlement, defendants agreed to temporarily transfer plaintiff to a smoke-free building pending defendant's receipt and review of written information provided by plaintiff regarding her current medical status and her need for accommodation. (Ex. D at 2.)

In accordance with the settlement agreement, on September 15, 1999 the DOC transferred plaintiff from the Adolescent Reception Detention Center at Riker's Island Prison (the "ARDC") to Bellevue Hospital ("Bellevue"), a completely smoke-free facility. (Letter from Irma Ozer to Thomas Bello, (September 15, 1999) Def. Ex. E ("Ex. E").) In September 1999 the DOC sent plaintiff a letter requesting her medical information. Plaintiff, however, did not respond to the letter, and on January 28, 2000 the DOC sent plaintiff a second request for the information. (DOC Interdepartmental Mem. Def. Ex. F.) This second request also went unanswered. (Ozer Dep. Def. Ex. C (Ex. C) at 28.)

Despite her failure to provide her medical documentation, plaintiff remained at Bellevue through the end of 2000. (Ex. C 29.) In January 2001 the DOC transferred plaintiff back to her

4

previous facility, the ARDC, where smoking was permitted. (Ex. C at 34.) In March 2001 the DOC posted plaintiff to Control Room No. 2, a Lexsan plastic enclosed, one person post, which according to the DOC is smoke-free. (Letter from Irma Ozer to Thomas Bello (March 8, 2001) Def. Ex. G ("Ex. G").)

Plaintiff requested that the DOC return her to Bellevue, and the DOC responded that they would do so only if she provided them with the requested medical information. (Ex. C at 34-35.) In response, plaintiff faxed the DOC a handwritten letter from Dr. David Manganaro, dated November 1, 1999. (Ex. R at 69; Ex. C at 35.) The letter stated that plaintiff had been diagnosed with Lemierre's disease, that she must avoid anything that would "thicken her blood such as smoke and secondhand smoke," and that she could return to work in a "smoke-free environment." (Letter form Dr. David Manganaro to Thomas Bello (November 1, 1999) Def. Ex. M ("Ex. M").)

The DOC reviewed Dr. Manganaro's letter, but was "puzzled by the diagnosis and the statement that secondhand smoke 'thickens' the blood." (Letter form David Goodman to Irma Ozer (January 25, 2001).) The DOC requested plaintiff provide more documentation to support the diagnosis, including test results and supporting medical literature. Id. In response, plaintiff sent the DOC additional literature on Lemierre's disease. (Ex. C at 43.) The

DOC reviewed this new material but again found it to be insufficient to satisfy the settlement agreement. (Letter from Gregory Smith to Irma Ozer (June 8, 2001).)

During the time she was stationed at the ARDC, plaintiff claims that her health deteriorated. (Ex. R at 89.) She claims she had to go back on high blood pressure medication, which she had previously been taken off of. (Ex. R at 89.) Additionally, she claims she was taken from the facility on two occasions by emergency medical personal for breathing related issues. (<u>Id.</u>; Ex. C at 56.)

Since the DOC would not transfer her, and she believed she was becoming sicker, in June 2001 plaintiff chose to file a second complaint with the EEOC, charge number 160-A1-1935. (EEOC Compl. Def. Ex. J.) In July 2001 the EEOC dismissed the second complaint because the commission could not determine "that the information obtained establishes a violation of the statute." (EEOC Dismissal and Notice of Rights Def. Ex I.) Following this determination, plaintiff brought the present action in October 2001.

## Discussion

A court grants summary judgment where the evidence presented shows that there are no issues of fact upon which a reasonable

jury could return a verdict for the nonmoving party. <u>Celotex</u>
<u>Corp. v. Catrett</u>, 477 U.S. 317, 330 (1986); <u>Anderson v. Liberty</u>
<u>Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). The moving party bears
the burden. <u>Sacay v. The Research Found. of the City Univ. of</u>
<u>New York</u>, 193 F. Supp. 2d 611, 624 (2d Cir. 2002). However, "the
[non-moving] party must produce specific facts sufficient to
establish that there is a genuine factual issue for trial." <u>Id.</u>
(quoting <u>Celotex Corp.</u>, 477 U.S. at 322-23).

Based on this standard defendants attack all of plaintiff's
claims, arguing that the entire matter should be dismissed. They
claim plaintiff cannot make out a prima facie case for either
discrimination or retaliation under the ADA. They argue that
plaintiff's Title VII claim should be dismissed because she
failed to exhaust her administrative remedies. They contend that
plaintiff's OSHA and New York Public Health Law claims should be
dismissed because those laws lack private rights of action. They
claim that the New York Labor Law is inapplicable in this
situation, and lastly, defendants contend that the SHRL and CHRL
claims should be dismissed because again plaintiff cannot show
she has a prima facie case. These arguments will be evaluated in
order.

## Discrimination Under the ADA

To succeed in an ADA employment discrimination case the plaintiff must show that: (1) the employer is covered by the ADA; (2) the plaintiff is an individual with a disability; (3) the plaintiff, whether accommodated or not, can perform the essential functions of the job; and (4) the employer had notice of the plaintiff's disability and did not reasonably accommodate the disability. <u>Ryan v. Grae & Rybicki, P.C.</u>, 135 F.3d 867, 869-70 (2d Cir. 1998); 42 U.S.C.A. § 12112 (a). In the present matter defendants concede that the DOC is a covered entity under the ADA. (Mem. Of Law in Supp. of Def's Mot. for Summ. J. ("Def's Summ. J.") at 5.) However, defendants argue that plaintiff is not an individual with a disability as defined by the ADA.

The ADA defines a disability <u>inter</u> <u>alia</u> as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual..." 42 U.S.C.A. § 12102 (2). Under this definition, "[m]erely having an impairment does not make one disabled..." <u>Toyota Motor Mfg., Ky., Inc. v. Williams</u>, 534 U.S. 184, 195 (2002). To determine whether a person has a disability as defined by the ADA, courts use the three-part analysis employed by the Supreme Court in <u>Bragdon v. Abbott</u>. 524 U.S. 624, 631 (1998); <u>Colwell v. Suffolk County</u>

<u>Police Department</u>, 158 F.3d 635, 641 (2d Cir. 1998). First, does the plaintiff have a physical or mental impairment; second, what activities does the plaintiff claim are impaired and are those activities major life activities; and third, are those activities substantially limited by the impairment? <u>Id.</u> <u>See</u> <u>Nugent v. The Rogosin Institute</u>, 105 F. Supp. 2d 106, 112-113 (E.D.N.Y. 2000) (applying the <u>Bragdon</u> analysis).

**A. Does plaintiff have a physical impairment?**

Initially, defendants take issue with the first step in the analysis, saying that since plaintiff's Lemierre's disease has been cured, she no longer has an infirmity. (Def's Summ. J. At 6-7.) To support this claim, defendants point to a passage in plaintiff's deposition where she is asked whether she still suffers from Lemierre's disease and she answers no. (Ex. B at 46.) However, that quotation alone is somewhat misleading. In other parts of the deposition plaintiff makes clear that she is not claiming to be currently suffering from Lemierre's disease. (Ex. B at 62.) Rather, she claims the disease and resulting blood clot caused her permanent respiratory damage. (Ex. B at 46, 62.) This claim is supported by Dr. Manganaro's 1999 letter. (Ex. M.) Furthermore, plaintiff makes the claim, though does not support it with documentary evidence, that since 2001 she has been taken from the prison by emergency medical services on two

9

occasions because she could not breathe.  (Ex. C at 56.)  A
"disorder or condition" affecting one's respiratory system is
considered a physical impairment under the Equal Employment
Opportunity Commission ("EEOC") regulations.  45 C.F.R.
§ 84.3(j)(2)(i)(A).  See Muller v. Costello, 187 F.3d 298, 312
(2d Cir. 1999) ("the EEOC's regulations are entitled to 'great
deference' in interpreting the ADA").  From this it is evident
that plaintiff's assertions concerning her condition are at least
sufficient to raise a triable issue of fact as to whether
plaintiff has a physical impairment.  See Albertson's, Inc. v.
Kirkingburg, 527 U.S. 555, 565 (1999) (citing 29 C.F.R. pt. 1630,
App. § 1630.2(j)) ("The determination of whether an individual
has a disability is not necessarily based on the name or
diagnosis of the impairment the person has, but rather on the
effect of that impairment on the life of the individual.").

**B.  Does plaintiff's impairment substantially limit her ability
to work or breathe?**

Despite the fact that plaintiff may be physically impaired,
defendant's next argument precludes her having a disability under
the ADA.  Plaintiff claims that her respiratory problems
substantially limit her ability to work and breathe.  Both
working and breathing "are specifically included in the
regulatory definition of 'major life activities.'"  Nugent, 105

10

F. Supp. 2d at 112 (citing 29 C.F.R. § 1630.2(i)).  However,

defendants argue that plaintiff's condition does not

substantially limit either activity.

**i. Plaintiff's ability to work**

The EEOC has promulgated specific regulations for

determining whether an individual's ability to work is

substantially limited by their impairment.  Sutton v. United Air

Lines, Inc., 527 U.S. 471, 491 (1999); Bartlett v. New York State

Bd. of Law Exam'rs, 226 F.3d 69, 83 (2d Cir. 2000) (upholding the

use of the EEOC's "substantially limits" definition in the work

context).  In reference to work, the regulations state that

"[t]he term substantially limits means significantly restricted

in the ability to perform either a class of jobs or a broad range

of jobs in various classes as compared to the average person

having comparable training, skills and abilities.  The inability

to perform a single, particular job does not constitute a

substantial limitation." 29 C.F.R. § 1630.2(j)(3)(i); Sutton,

527 U.S. at 491; Cameron v. Comty. Aid For Retarded Children,

Inc., 335 F.3d 60, 64-5 (2d Cir. 2003).  The Second Circuit

interpreted this regulation in Muller v. Costello, a case very

similar to the one at bar.  187 F.3d 298 (2d Cir. 1999).  Like

Mrs. Vinson in the present action, Muller was also a DOC

correction officer who had trouble breathing in smoke-filled

environments. Id. at 302-3. The Second Circuit rejected his claim. Id. at 313. The Circuit found that even with his impairment he could still theoretically work as either a security guard or a correction officer at a smoke-free facility. Id. Therefore, even though he was precluded form the particular job he held at the DOC, he was not precluded from the class of jobs that included correction officer. Id. As a result, the court found that his ability to work was not substantially limited. Id. See Fink v. City of New York, 129 F. Supp. 2d 511, 529 (E.D.N.Y. 2001) (requiring a showing that the defendant was precluded from a large class of jobs in order to prove that his major life activity of working was impaired).

In the present matter there is even more evidence than in Muller that plaintiff can still work in the class of jobs that includes correction officer. Plaintiff concedes that while she worked at Bellevue Hospital she had no physical problems. (Ex. B at 52-3.) At Bellevue, plaintiff's job title and responsibilities were the same as they had been at her previous posting at the ARDC. (Ex. R at 23.) Since her work at Bellevue and the ARDC both require the same "training, knowledge, skills or abilities" both jobs are within the same broad class of jobs. Muller, 187 F.3d at 313 (citing 29 C.F.R. § 1630.2(j)(3)(ii)(B)). Therefore, unlike in Muller where the court conjectured that Mr.

Muller could work at similar jobs in smoke-free environments, here there is proof that plaintiff can do so.  Because she is not disqualified from a broad class of jobs, plaintiff has not met the EEOC requirements to show a substantial limitation on her ability to work.  See Schapiro v. New York City Dep't of Health, 179 F. Supp. 2d 170, 175-6 (S.D.N.Y. 2001) (rejecting an argument that the plaintiff was severely limited in his ability to work where he had previously performed the same job in a clean, well-ventilated work place).

**ii. Plaintiff's ability to breathe**

Next, defendants argue that plaintiff has not sufficiently shown that her condition substantially limits her ability to breathe in settings outside of work.  In support of her claim, plaintiff argues that her statements made during her deposition concerning her inability to go to smoke-filled bars and clubs are sufficient to show that she has trouble breathing outside of work.

Unlike the major life activity of working, there are no specific EEOC or Department of Justice regulations governing whether a person's ability to breathe is substantially limited.

Therefore, courts are left with the guidance provided by the general definition of "substantially limits" found in 29 C.F.R. § 1630.2(j)(1):

> (i) Unable to perform a major life activity that the average person in the general population can perform; or
> (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

The Second Circuit in the <u>Muller</u> case held that simply alleging on the job breathing difficulty is insufficient to show a substantial limitation. <u>Muller</u>, 187 F.3d at 314. To prevail, plaintiff must show that her breathing in general is impaired. <u>Id.</u> Similar cases have often turned on whether the plaintiff provided sufficient evidence to show breathing difficulties outside of work. <u>E.g.</u> <u>id.</u>; <u>Medlin v. Rome Strip Steel Co., Inc.</u>, 294 F. Supp. 2d 279, n.7 (N.D.N.Y. 2003) (rejecting any argument that the plaintiff's breathing was substantially impaired where the plaintiff did not allege any specific off the job breathing problems); <u>Brown v. Triboro Coach Corp.</u>, 153 F. Supp. 2d 172, 182 (E.D.N.Y. 2001) (rejecting plaintiff's claimed disability because plaintiff had shown insufficient evidence that his sleep apnea affected his breathing outside of work); <u>Schapiro</u>, 179 F. Supp.

2d at 176 (stating that the plaintiff must show a general difficulty breathing, not just difficulty at work).  One indication is whether the impairment severely impinges the plaintiff's ability to exercise or otherwise be active.  <u>Keck v. New York State Office of Alcoholism & Substance Abuse Servs.</u>, 10 F. Supp. 2d 194, 199 (N.D.N.Y. 1998) ("Evidence that a person regularly participates in recreational activities undermines a claim that their ability to breathe is handicapped.").

Here plaintiff has not shown a sufficient limitation in her ability to breathe outside of her work.  Plaintiff's bare allegation that she can no longer go to restaurants, bars and clubs that allow smoking is insufficient to show a severe limitation.  <u>See</u> <u>Schapiro</u>, 179 F. Supp. 2d at 176 (rejecting the plaintiff's argument that he is disabled because his breathing difficulties make it such that he can not do some physical activities "to the same degree" as before).  Plaintiff has provided no evidence that she is limited in her ability to exercise[3] or take part in any recreational activities outside the presence of cigarette smoke.  As a result, plaintiff has not shown facts upon which a reasonable jury could find that her

---

[3] Plaintiff did mention in her deposition that she has hypertension and high blood pressure, but she has not alleged that either condition prevents her from exercising.  (Ex. B at 61.)

impairment severely limits her ability to breathe.  <u>Contra</u>

<u>Jeffrey v. Ashcroft</u>, 285 F. Supp. 2d 583 (M.D. Pa. 2003) (finding

under a similar standard that there was sufficient evidence to go

to a jury where the plaintiff showed that even "the slightest

exertion" caused "serious breathing difficulties").

Since plaintiff has not shown that any of her major life

activities are substantially limited by her breathing

difficulties, she has failed to show she is disabled under the

ADA definition.  Plaintiff's ADA discrimination claim, therefore,

must be dismissed.

### (2)

### Retaliation

In addition to her claim for discrimination, plaintiff also

asserts that defendants transferred her from Bellevue back to the

ARDC in retaliation for her filing a claim with the EEOC.  For

plaintiff to prove retaliation under the ADA she must first show

she has a prima facie case for retaliation.  <u>Reg'l Econ. Cmty.</u>

<u>Action Program, Inc. v. City of Middletown</u>, 294 F.3d 35, 54 (2d

Cir. 2002).  Plaintiff must establish that: (1) she engaged in a

protected activity, (2) defendants knew about the activity,

(3) defendants took an adverse employment action against her, and

(4) a causal connection exists between the protected activity and

the adverse action.  <u>Weissman v. Dawn Joy Fashions, Inc.</u>, 214

F.3d 224, 234 (2d Cir. 2000).  If plaintiff is unable to show a prima facie case, then her retaliation claim must be dismissed.

## A. Adverse employment action

Defendants first disagree with plaintiff's assertion that her transfer was an adverse employment action.  Plaintiff in response simply states that when defendants transferred her they withdrew a reasonable accommodation and in that context the transfer was an adverse employment action.

An adverse employment action is a material change in "the terms and conditions of employment."  Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000).  A material change does not necessarily require a clearly quantifiable loss. Courts have found that a wide variety of actions ranging from outright termination, Sacy, 193 F. Supp. 2d at 611, to a loss of job title or responsibilities, Treglia v. Town of Manlius, 313 F.3d 713, 720 (2d Cir. 2002), to simply a series of negative performance evaluations, Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999), are all sufficient to show a material change.

For a transfer alone to be considered an adverse employment action plaintiff must show that it "result[ed] in a change in responsibilities so significant as to constitute a setback to [her] career."  Galabya v. New York City Bd. of Educ., 202 F.3d 636, 641 (2d Cir. 2000).  In the present situation, plaintiff

cannot do so.  As mentioned, the job title and responsibilities were the same at both Bellevue and the ARDC, thus the transfer was at worst a lateral move, which is not an adverse action.  <u>See</u> <u>Loucar v. Boston Market Corp.</u>, 294 F. Supp. 2d 472, 481 (S.D.N.Y. 2003) (holding that a lateral transfer is not an adverse action).

Nevertheless, plaintiff is correct that a transfer resulting in a denial or withdrawal of a reasonable accommodation can be considered an adverse employment action.  <u>See</u> <u>Honey v. County of</u> <u>Rockland</u>, 200 F. Supp. 2d 311, 320 (S.D.N.Y. 2002) (stating that if the plaintiff showed that her supervisor had refused to continue to accommodate her disability because she had filed an EEOC complaint, that action would be considered an adverse employment action); <u>Adams v. New York State Thruway Auth.</u>, No. 97-CV-1909, 2001 WL 874785 n.11 (N.D.N.Y. March 22, 2001) (stating in dicta that a "denial of a request for a reasonable accommodation can be an adverse employment action").  The reason why the accommodation was withdrawn is not material at this stage of the analysis.[4]  To pass this prong of the prima facie test, plaintiff must simply show that defendants had been accommodating

---

[4] All ADA retaliation claims are "analyzed under the same burden-shifting framework established for Title VII cases;" where first the plaintiff must show she has a prima facie case for retaliation.  <u>Treglia</u>, 313 F.3d at 719.  It is under the second step in this burden-shifting analysis where the defendant presents their legitimate, non-retaliatory reason for taking the adverse employment action.  <u>Id.</u> at 721.

her and that they stopped accommodating her.

Plaintiff was transferred to Bellevue to accommodate her request for a smoke-free facility. (Ex. E.) When defendants transferred her back to the ARDC they withdrew an accommodation and plaintiff suffered an adverse employment action.

## B. Causal connection

Defendants next argue that plaintiff cannot show a causal connection between the filing of the EEOC action and the transfer. Unless there is direct evidence of a connection, typically courts infer a causal connection from a relatively short time interval between the protected activity and the adverse employment event. Treglia, 313 F.3d at 721.

In the matter at bar, plaintiff points to no direct evidence of a casual connection. In addition, the greater than two year time lapse between plaintiff's EEOC filing in early 1998 and her transfer back to the ARDC in 2001 is far too long to infer such a connection. Greco v. County of Nassau, 146 F. Supp. 2d 232, 245 (E.D.N.Y. 2001) (finding a two year period between an EEOC complaint and an adverse employment action too long to infer a causal connection in an ADA retaliation claim); Gallo v. Eaton Corp., 122 F. Supp. 2d 293, 303 (D. Conn. 2000) (holding that a two year lapse between plaintiff's filing a claim and his termination was too long to establish a causal connection).

Plaintiff claims that the parties engaged in "continuous negotiations" during the two year period and that those negotiations should be used to determine if a causal connection exists.

Plaintiff cites no case law to support this argument[5] and indeed the argument itself is belied by the facts. The parties entered into the settlement agreement for the 1998 EEOC filing in May 1999 and defendants transferred plaintiff to Bellevue in September 1999. Subsequent to this transfer, defendants assert, and plaintiff does not convincingly dispute, that the parties had no discussions until January 2001, after plaintiff's transfer back to the ARDC. (Ex. C at 28-29.) Defendants' assertion is supported by their letters to plaintiff in September 1999 and January 2000, both of which went unanswered. (Exhibits F-G.) From this dearth of communications, at best plaintiff can argue that negotiations continued until plaintiff's transfer to Bellevue. After that, the parties appear to have taken a fifteen month hiatus. <u>Contra</u> <u>Treglia</u>, 313 F.3d at 721 (accepting, for purposes of establishing a causal connection, the various additional protected actions taken between the initial protected

---

[5] Plaintiff's entire reply concerning retaliation consists of two short paragraphs which cite to only one case (for the standard for prima facie retaliation) and consists entirely of conclusory assertions concerning the facts in this case. (Pl.'s Mem. of Law in Opp'n to Def. Mot. for Summ. J. at 14.)

action and the adverse employment event).  Even this fifteen month period, though, is still is too long to infer a causal connection between plaintiff's complaint and her transfer back to the ARDC.  See Gurry v. Merck & Co., Inc., No. 01 Civ. 5659, 2003 WL 1878414 at * 6 (S.D.N.Y. April 14, 2003) (stating that a fifteen month period was too long to establish a causal connection in a Title VII case); Allen v. St. Cabrini Nursing Home, Inc., 198 F. Supp. 2d 442, 449-50 (S.D.N.Y. 2002) (declining to find a causal connection in a Title VII case where a fifteen month gap existed between the protected action and the termination).

Since plaintiff is unable to show a causal connection between her initial filing with the EEOC and her transfer back to the ARDC, she cannot show a prima facie case for retaliation. Therefore, no reasonable jury could return a verdict in her favor on her retaliation claim and the claim must be dismissed.

**(3)**

**Title VII Claim**

Concerning the Title VII claim, Defendants argued it should be dismissed for a failure to exhaust administrative remedies. Plaintiff concedes this point.  Plaintiff's claim under Title VII is, therefore, dismissed.

**(4)**

### Occupational Safety and Health Act ("OSHA") Claim

Plaintiff's claim under OSHA is also dismissed. OSHA does not contain a private right of action. 29 U.S.C. § 653(b)(4); Donovan v. Occupational Safety and Health Review Com'n, 713 F.2d 918, 926 (2d Cir. 1983).

**(5)**

### New York Public Health Law Claims

Defendants contend that plaintiff's claim under Article 13-E (§§ 1399-n through 1399-x) of the New York Public Health Law should be dismissed because that article does not allow for a private right of action. Plaintiff's brief, however, is silent on this issue.

Defendants are correct. No private right of action exists to enforce Public Health Law Article 13-E. N.Y. Pub. Health Law § 1399-w (McKinney 2002) ("Nothing in any other section of this article shall be construed to create . . . any theory of liability upon which any person may be held liable to any other person for exposure to smoke."); Herbert Paul, CPA, PC v. 370 Lex, L.L.C., 7 Misc.3d 747, 751, 794 N.Y.S.2d 869, 873 (Sup. Ct. N.Y. County 2005). As there is no private right of action, plaintiff's claim under the New York Public Health Law is dismissed.

## New York Labor Law Claims

As to plaintiff's claim under the New York Labor Law §201-d, defendants argue that it must be dismissed because that section only protects certain activities by workers, none of which plaintiff participated in.  Again, plaintiff's response brief does not mention this claim.

New York State Labor Law § 201-d states that an employer can not fire, refuse to hire, or otherwise discriminate against a person based on the person's political or recreational activities, use of consumable products, or membership in a union. N.Y. Lab. Law § 201-d(2)(McKinney 2002).  Plaintiff presents no evidence that defendants discriminated against her based on any of these activities or even that she partook in any of these activities.  Therefore, plaintiff's New York State Labor Law claims are dismissed.

## State and City Human Rights Laws Claims

As plaintiff's other claims have been dismissed, the only claims remaining are those under the New York State and New York City Human Rights Laws.  These laws closely track the ADA. However, the Second Circuit noted in <u>Reeves v. Johnson Controls World Services</u>, 140 F.3d 144, 147 (2d Cir. 1998), that the New

York Court of Appeals has interpreted the state and city laws to have a broader definition of the term disability.  Id.; Romain v. Ferrara Bros. Bldg. Materials Corp., No. 97-CV-4001, 2004 WL 1179352 at *4 (E.D.N.Y. May 28, 2004).  Under this broader definition a plaintiff does not need to identify any major life activities that the disability limits.  Reeves, 140 F.3d at 156; Picinich v. United Parcel Service, 321 F. Supp. 2d 485, 500 (N.D.N.Y. 2004).  A plaintiff need only show that she has a disability which "is demonstrable by medically accepted clinical or laboratory diagnostic techniques . . . ."  N.Y. Exec. Law § 292(21) (McKinney's 2002); Reeves, 140 F.3d at 154.  Plaintiff in the matter at bar has shown evidence that she may have a medically demonstrable disability.  However, as all the federal claims have been dismissed, there is no reason to exercise supplemental jurisdiction over plaintiff's SHRL and CHRL claims. See Scott v. Flaghouse, Inc., 159 F.3d 1348 (Table), 1998 WL 536764 at *2 (2d Cir. July 07, 1998) (relying on Reeves to vacate summary judgment of SHRL claims, but then dismissing the SHRL claims because no federal claim survived summary judgment).

## Conclusion

For the foregoing reasons, defendants' summary judgment motion is granted as to all claims.  The Clerk of the Court is directed to close the case.


Dated:  Brooklyn, New York
        January 17, 2006


                              SO ORDERED:


                              _____/s/_____
                              David G. Trager
                              United States District Judge